# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GS HOLISTIC, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>CIGARWORLD INC. d/b/a<br>MILWAUKEE VAPOR EAST and<br>CHIRAG A. PATEL,<br><br>                Defendants. | Case No. 23-CV-701-JPS<br><br>**ORDER** |

### 1.    INTRODUCTION

In June 2023, Plaintiff GS Holistic, LLC ("Plaintiff") sued Defendants Cigarworld Inc. d/b/a Milwaukee Vapor East ("Cigarworld") and its owner, Chirag A. Patel (collectively, "Defendants") for willful trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114 ("Count One") and false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) ("Count Two"). ECF No. 1. Defendants failed to timely appear to answer or otherwise respond to Plaintiff's complaint after being served. *See* ECF Nos. 4, 5. Accordingly, the Court ordered Plaintiff to request entry of default and, later, to move for default judgment. *See* July 19, 2023 and September 11, 2023 text orders.

Now before the Court is Plaintiff's motion for default judgment.[1] ECF No. 9. For the reasons discussed herein, the Court will grant the motion

---

[1]Notwithstanding Plaintiff's service of the motion on Defendants, ECF No. 9 at 4, Defendants still did not appear to defend.

for default judgment, award Plaintiff statutory damages in the total amount of $75,000, and dismiss the case.

## 2. FACTUAL ALLEGATIONS[2]

Since 2020, Plaintiff has marketed and sold products using its trademark "Stündenglass." The Stündenglass products include glass infusers and related accessories and are recognized nationally and internationally. The Stündenglass brand is a leading company in the industry, known for its high quality and innovation.

For approximately two years, Plaintiff worked to distinguish its Stündenglass brand as the premier manufacturer of glass infusers by emphasizing its use of quality materials and focusing on principles that facilitate a superior smoking experience. Because of this commitment to quality and innovation, Stündenglass products have accrued a significant consumer following.

Due to Plaintiff's continuous and extensive use of the trademark "Stündenglass," Plaintiff was granted valid and subsisting federal statutory and common law rights to the trademark. Plaintiff owns the following federally registered "Stündenglass"-related trademarks, all of which are registered on the Principal Register, have become incontestable within the meaning of Section 15 of 15 U.S.C. § 1065, and are distinctive to both consumers and in Plaintiff's trade:

1. U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association

---

[2]All facts relevant to this Order are drawn solely from the complaint. ECF No. 1; *see infra* Section 3 (noting that, for purposes of default judgment, court must accept complaint's factual allegations as true, except those relating to damages) (citing *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020)). Internal citations have been omitted for brevity.

with goods further identified in registration in international class 011.

2. U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.



ECF No. 9-11 at 2 ("Description of Mark . . . The mark consists of the letter 'S' through the center of which is a capsule shape.")

3. U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

(collectively, the "Stündenglass Marks"). Plaintiff has used the Stündenglass Marks in commerce in the United States continuously since 2020. The Stündenglass Marks appear clearly on Plaintiff's products, packaging, and advertising, and Plaintiff has expended substantial time, money, and other resources in developing, promoting, and protecting the Stündenglass Marks, as well as in building goodwill.

Plaintiff sells products branded with its Stündenglass Marks to approximately 3,000 authorized stores in the United States, including in Wisconsin. Due to the recognized quality associated with genuine Stündenglass products, consumers are willing to pay higher prices for products branded with the Stündenglass Marks. For example, a

Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass competing product is sold at anywhere from $199 to $600.

Defendants have offered, and continue to offer, for sale counterfeit Stündenglass products bearing the Stündenglass Marks or imitations thereof without Plaintiff's consent. Defendants continue to offer for sale counterfeit goods bearing the likeness of genuine Stündenglass products and bearing marks which are identical or substantially indistinguishable from the Stündenglass Marks. Defendants also advertise and promote these counterfeit products, which are made of inferior materials and utilize inferior technology compared to genuine Stündenglass products.

On December 27, 2022, Plaintiff's investigator visited Defendants' store and observed that it offered for sale counterfeit glass infusers branded with the Stündenglass Marks. The investigator purchased one such counterfeit product with the Stündenglass Mark affixed to it for $369.59.[3]

---

[3] Plaintiff attests that the value of the genuine product at retail is $599.95. ECF No. 9-2 at 2.



ECF No. 9-12 at 3–4 (counterfeit product purchased by investigator).

Defendants' use of the counterfeit Stündenglass Marks began after the registration of the Stündenglass Marks. Defendants' sale of these counterfeit products bearing the Stündenglass Marks or imitations thereof, and Defendants' deliberate practice of using names and images identical or similar to the Stündenglass Marks, has caused Plaintiff to suffer financial losses (in an amount that Plaintiff concedes is "difficult to determine"), damages to Plaintiff's goodwill and reputation, and confusion among consumers. Defendants' infringing acts deceive consumers as to the source or origin of the counterfeit products and lead consumers to mistakenly believe that the counterfeit products are affiliated with Plaintiff. Defendants deliberately intend to trade on the goodwill of the Stündenglass Marks and divert potential sales of Stündenglass products to themselves. As a result, Defendants have accrued and will continue to accrue substantial profits to which they are not entitled.

Defendants' actions have not only caused Plaintiff to suffer lost profits but have also forced Plaintiff to retain counsel and incur costs associated with bringing this action.

**3. LAW & ANALYSIS**

When a defendant has defaulted, the Court must accept all the allegations in the complaint as true, except those relating to damages. *Arwa Chiropractic, P.C.*, 961 F.3d at 948 (citing Fed. R. Civ. P. 8(b)(6) and *Quincy Bioscience, LLC v. Ellishbooks*, 957 F.3d 725, 725 (7th Cir. 2020)); *in re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) ("Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks.").

**3.1 Liability**

"Even after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Quincy Bioscience, LLC v. Bryk Enter., LLC*, No. 22-CV-658-JDP, 2023 U.S. Dist. LEXIS 65712, at *8 (W.D. Wis. Apr. 13, 2023) (quoting 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.)). The Court therefore begins by analyzing whether the allegations in the complaint, taken as true, state claims for relief under 15 U.S.C. §§ 1114 (Count One) and 1125(a) (Count Two).

Section 1114(a) of the Lanham Act "specifies a cause of action for the unauthorized use of a registered trademark" and

> renders a person liable . . . when he "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

*Phoenix Entm't, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (quoting 15 U.S.C. § 1114). Meanwhile, § 1125(a) "creates a remedy against a person who engages in unfair competition by, inter alia, falsely designating the origin of a product." *Id.* Section 1125 provides that

> [a]ny person who, on or in connection with any goods . . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . , which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . . shall be liable in a civil action . . . .

"To prevail on either type of claim, a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of the mark is likely to cause confusion among consumers." *Phoenix*, 829 F.3d at 822 (citing *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673–74 (7th Cir. 2016)); *see also Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 (7th Cir. 2019) ("[C]laims for trademark infringement and unfair competition both require (1) that [plaintiff's] mark be validly registered and (2) that [defendant's] use be likely to cause confusion among consumers.") (citing *H-D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759 (7th Cir. 2007) and *Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 & n.8 (7th Cir. 2001)).

### 3.1.1 Protectability of the Marks

With respect to the protectability of the marks, "[r]egistration under the [Lanham] Act affords the registrant a rebuttable presumption of validity." *CAE, Inc.*, 267 F.3d at 673 (quoting 15 U.S.C. § 1115(a) ("[A] mark registered on the principal register . . . shall be prima facie evidence of the validity of the registered mark . . . .")); *see also Uncommon, LLC*, 926 F.3d at 419 (describing this first element as requiring "valid[] regist[ration]").

Plaintiff has satisfied this element. *See* ECF No. 1 at 3 (asserting that the Stündenglass Marks are registered on the Principal Register and have become incontestable); ECF No. 9-11 (proof of registration on Principal Register*); see also Krispy Krunchy Foods LLC v. Silco LLC*, No. 20-CV-293-PP, 2023 U.S. Dist. LEXIS 40414, at *9 (E.D. Wis. Mar. 10, 2023) ("The plaintiff has demonstrated that its marks are validly registered, . . . leaving the court to consider only whether the defendant's usage is likely to cause confusion.").

### 3.1.2 Likelihood of Confusion

Next, Plaintiff must sufficiently allege that "the defendant's use of th[e] mark is likely to cause confusion among consumers." *Phoenix,* 829 F.3d at 822 (citing *CAE, Inc.*, 267 F.3d at 673–74). "To decide if there is a likelihood of confusion, [courts] ask whether consumers who might use either product would likely attribute them to a single source." *Uncommon, LLC*, 926 F.3d at 425 (citing *Bd. of Regents of Univ. of Wis. Sys. v. Phx. Int'l Software, Inc.*, 653 F.3d 448, 455 (7th Cir. 2011)). Courts use

> seven factors in making this decision: (1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to "palm off" its product as that of another.

*Id*. (citing *Sorensen v. WD-40 Co.*, 792 F.3d 712, 716 (7th Cir. 2015)). "No one factor is dispositive." *Id.* (citing *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 704 (7th Cir. 2014)). "Usually, however, 'the similarity of the marks, the defendant's intent, and actual confusion' are most important." *Id.* (quoting *Packman*, 267 F.3d at 643).

The Seventh Circuit has also held, albeit in a nonprecedential opinion, that courts can presume likelihood of confusion where a defendant "produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007)) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987)). Other courts have concluded the same. *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607, at *10–11 (N.D. Ind. May 31, 2013) ("Several courts have recognized that in counterfeit cases such as this one—where the infringer has clearly used the precise trademark's likeness on the very type of goods that the trademark holder sells—that the defendant has 'intentionally copie[d] a trademark design with the intent to derive a benefit from the reputation of another' and a likelihood of confusion can be presumed.") (quoting *Gen. Motors Corp. v. Autovation Techs., Inc.*, 317 F. Supp. 2d 756, 760 (E.D. Mich. 2004) (collecting cases)). Indeed, "[a] presumption of confusion in counterfeiting cases is 'entirely sensible[,] since the only reason people sell counterfeit merchandise is to piggyback on a designer item's popularity and then profit from it in the process.'" *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1032 (E.D. Wis. 2018) (quoting *Coach*, 2013 U.S. Dist. LEXIS 76607, at *4).

Taking Plaintiff's factual allegations as true, the Court is satisfied that this second element for liability is met. The marks utilized on the counterfeit products are identical or substantially indistinguishable from the Stündenglass Marks. *See* 15 U.S.C. § 1127 (counterfeit goods must bear "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark"). The products are similar—indeed, they are imitations intended to pass as genuine Stündenglass products. It is clear

that the intention was to capitalize on the Stündenglass brand and trade on its goodwill. *See Coach*, 2013 U.S. Dist. LEXIS 76607, at *23 ("[A]n intent to 'exploit consumers' associations with' the genuine article, or to profit from the goodwill associated with [the] holder of the trademark, is sufficient.") (quoting *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 830 (7th Cir. 2002)). Plaintiff has sufficiently alleged a likelihood of confusion.

### 3.2 Relief

Having concluded that "the unchallenged facts constitute a legitimate cause of action" for both Counts One and Two, *Quincy*, 2023 U.S. Dist. LEXIS 65712, at *8 (quoting 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.)), the Court proceeds to the issue of damages. "Under the law of this circuit, judgment by default may not be entered without a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.3d 1319, 1323 (7th Cir. 1983)).

Plaintiff seeks an award of $150,000 in statutory damages ($50,000 for each of the Stündenglass Marks) and costs in the amount of $931.59. ECF No. 10 at 1; ECF No. 8-2 at 3. Plaintiff also seeks an injunction against Defendants. ECF No. 10 at 15–16.[4]

---

[4]Plaintiff also purported to seek disgorgement of profits under 15 U.S.C. § 1117(a) and treble damages under § 1117(b). ECF No. 1 at 12–13. Section 1117(b) provides that in cases of the intentional use of a counterfeit mark, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater . . . ." But Plaintiff does not mention treble damages or disgorgement in its motion for default judgment, and so the Court will not analyze these issues.

### 3.2.1 Damages

Plaintiff is entitled to seek statutory damages under 15 U.S.C. § 1117(c). *See H-D U.S.A.*, 411 F. Supp. 3d at 1045 ("When a plaintiff succeeds in proving counterfeiting, as opposed to mere infringement, . . . he may elect to receive an award of statutory damages in lieu of actual damages.") (citing § 1117(c)). That provision provides that in cases

> involving the use of a counterfeit mark . . . the plaintiff may elect . . . to recover, instead of actual damages and profits . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods . . . in the amount of . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods . . . as the court considers just; or . . . if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods . . . .

15 U.S.C. § 1117(c); *Roor Int'l Bv v. Muncie Petroleum*, No. 1:18-CV-03959-SEB-DML, 2020 U.S. Dist. LEXIS 92171, at *8 (S.D. Ind. May 27, 2020) ("The damages limit increases to $2,000,000 per counterfeit mark per type of goods . . . sold, offered for sale, or distributed if the court finds that the defendant acted willfully.") (citing 15 U.S.C. § 1117(c)(2)).

Plaintiff argues that Defendants' violations were willful such that it is entitled to a higher statutory damage award.[5] ECF No. 10 at 9–13. "[I]nfringement is willful when the infringer knows that it is infringing or acts 'in reckless disregard' of that possibility." *H-D U.S.A.*, 411 F. Supp. 3d at 1045 (quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502,

---

[5]Notwithstanding this request, Plaintiff does not actually request damages in an amount exceeding that which is allowed in circumstances of non-willful infringement. ECF No 9-2 at 3 (requesting $50,000 per mark); 15 U.S.C. § 1117(c) (maximum statutory damages award of $200,000 per counterfeited mark in case of non-willful infringement; maximum statutory damages award of $2,000,000 per counterfeited mark in case of willful infringement).

511 (7th Cir. 1994)). "To find knowing infringement, 'willful blindness is knowledge enough.'" *Id.* (quoting *Louis Vuitton S.A. v. Pun Yang Lee*, 875 F.2d 584, 590 (7th Cir. 1989) and citing *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1149 (7th Cir. 1992)).

The specific allegations addressing willfulness in this case are somewhat sparse and vague. For example, the complaint alleges that Defendants' actions were willful because they "deliberate[ly] inten[ded] to trade on the goodwill" of Plaintiff and the Stündenglass brand. ECF No. 1 at 8. Plaintiff also argues that "[t]he fact that Defendants did not purchase the products from [Plaintiff] provides evidence of an inference that Defendants either knew or should have known that the products were counterfeit." ECF No. 10 at 12.

At the same time, however, Plaintiff does not allege that, prior to initiating this suit, it put Defendants on notice of Plaintiff's ownership of the Stündenglass Marks such that willfulness could be inferred by Defendants' failure to cease the infringing activities. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) ("[E]vidence that notice had been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness . . . .") (quoting *Video Views, Inc. v. Studio 21*, 925 F.2d 1010, 1021 (7th Cir. 1991)).

Nevertheless, willfulness may be presumed by virtue of Defendants' default. *See Chloe v. Queen Bee of Beverly Hills*, No. 1:06-cv-3140, 2009 U.S. Dist. LEXIS 84133, at *18 (S.D.N.Y. July 16, 2009) ("Willfulness may be established by a party's default because an innocent party could presumably have made an effort to defend itself.") (citing *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) and *Fallaci v. New Gazette*

*Literary Corp.*, 568 F. Sup. 1172, 1173 (S.D.N.Y. 1983)); *Roor Int'l Bv*, 2020 U.S. Dist. LEXIS 92171, at *9 ("By failing to defend or otherwise participate in the action, [Defendants] ha[ve] left Plaintiff['s] allegation of willfulness unchallenged."). "Since Defendants failed to defend this action and have otherwise ignored the Court's orders and these proceedings, Defendants' willfulness is presumed." *Cme Grp. Inc. v. Nagovskiy*, No. 1:19-CV-01621, 2019 U.S. Dist. LEXIS 248196, at *10 (N.D. Ill. Sept. 27, 2019) (citing *Chloe*, 2009 U.S. Dist. LEXIS 84133, at *18). In any event, and as noted *supra* note 5, the analysis of willfulness at this point in the analysis is primarily academic (although it is relevant later on in the analysis).

Irrespective of whether Defendants' infringing conduct is determined to be willful, the Court must nevertheless analyze whether the amount of statutory damages sought is appropriate. The Lanham Act "confers a great deal of discretion on a district court in fashioning a remedy for trademark infringement." *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 912 (7th Cir. 2019) (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984)); *see also* § 1117(c) (authorizing district court to impose statutory damages "as the court considers just").

"Taking copyright infringement principles as a guide, courts apply the following factors to determine statutory damages for trademark infringement:"

> (1) the defendant's expenses saved and profits reaped; (2) the plaintiff's lost revenue; (3) the value of the trademark; (4) general deterrence; (5) the willfulness of the defendant's conduct; (6) the defendant's cooperation in providing records from which to determine the value of the infringing products; and (7) specific deterrence of the defendant.

*Coach, Inc. v. 3D Designers Inspirations*, 70 F. Supp. 3d 942, 947 (C.D. Ill. 2014) (citing *Coach, Inc. v. Pure MLK Last Stop, Inc.*, No. 12-CV-2254, 2013 U.S. Dist. LEXIS 157433, at *2 (C.D. Ill. Nov. 4, 2013)).

With respect to the value of the trademark, the complaint alleges that Plaintiff has expended substantial time, money, and effort in developing its brand recognition and goodwill. As a result of these efforts, Plaintiff alleges, the Stündenglass Marks have become highly recognizable throughout the United States. This heightens the value of the Stündenglass Marks and supports a higher statutory damages award. At the same time, however, the Stündenglass Marks have only been in existence and used continuously since 2020—not particularly long. The value of the Stündenglass Marks is undercut by their relatively short lifetime. *C.f. H-D U.S.A., LLC*, 311 F. Supp. 3d at 1048 (fact that plaintiff "ha[d] developed and strengthened [its marks] over decades of exposure" weighs in favor of higher damages award).

A need to specifically deter Defendants from further counterfeiting activity is also at play here. Because Defendants have failed to appear and defend, the Court is unable to determine whether Defendants have ceased offering for sale counterfeit Stündenglass products. *See Volkswagen AG v. iman365-usa*, No. 18-cv-06611, 2020 U.S. Dist. LEXIS 34218, at *21 ("[N]ot only is there a need to deter trademark infringement generally, but there is also a heightened need to deter future violations by this Defendant, who 'continues to offer for sale [products] that appear to be counterfeits . . . .'") (citation omitted).

Additionally, a statutory damages award "should represent some approximation of actual damages and are not to represent a windfall to a prevailing plaintiff." *Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2014 U.S. Dist. LEXIS 28713, at *9 (N.D. Ind. Mar. 6, 2014) (collecting cases). In

this case, "the evidence as it stands does not indicate that Defendants' counterfeit goods significantly harmed Plaintiffs." *Entm't One UK Ltd. v. 2012shiliang*, 384 F. Supp. 3d 941, 953–54 (N.D. Ill. 2019).

With respect to damages, Plaintiff attests only that its total national sales for its Stündenglass products amounted to $1,700,000 in 2020 and $9,600,000 in 2021, ECF No. 9-3 at 2, and that "if the market had not been impacted by the flood of inferior, mass-produced fake Stündenglass products, [Plaintiff's] 2021 sales would have been approximately $38,400,000.00"—i.e., $28,800,000 more than Plaintiff's actual 2021 sales revenue. *Id.* But there is nothing in the record from which to approximate how much of such loss is attributable to *Defendants specifically* as opposed to the counterfeiting of Plaintiff's Stündenglass products by other parties nationally. In fact, it was not until December 2022—well after Plaintiff purports to have lost these millions in sales—that Plaintiff's investigator visited Defendants' store and confirmed that it was offering for sale counterfeit products. ECF No. 1 at 6–7. Based on the record before it, the Court has no way to connect such voluminous financial losses specifically to Defendants.

To be sure, Plaintiff's inability to precisely calculate its damages attributable to Defendants is due at least in part to Defendants' failure to appear to defend in this action. ECF No. 10 at 13 ("Because the Defendants have refused to defend, it is not possible for [Plaintiff] to establish exact damages with certainty. Plaintiff was unable to discover the number of counterfeit Stündenglass products that Defendants imported and sold."); *Pure MLK Last Stop, Inc.*, 2013 U.S. Dist. LEXIS 157433, at *10 ("[D]ue to Defendant's default, no true accounting of how many counterfeit items Defendant produced and sold can be accurately known.").

Nevertheless, Plaintiff does not suggest that, of the "massive amount of counterfeit[ing]" of its products occurring in the United States, ECF No. 9-3 at 1, these Defendants, in particular, are significant culprits. The complaint does not suggest that Cigarworld is a particularly large organization capable of infringing on a widespread scale itself; as Plaintiff implicitly concedes, ECF No. 10 at 11, Defendants are not themselves the "notorious suppliers selling knockoffs from China." *C.f. Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543, at *2 (S.D.N.Y. Feb. 27, 2006) (maximum statutory damages award appropriate where infringer had large operation and produced millions of infringing goods); *see also Luxottica Grp. S.p.A. v. Chen*, No. 16 C 6850, 2017 U.S. Dist. LEXIS 29999, at *8 (N.D. Ill. Mar. 2, 2017) ("Plaintiffs have not introduced evidence that Defendant operates a large-scale counterfeiting operation . . . ."); *Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. LEXIS 86956, at *11 (N.D. Ill. July 6, 2015) (same); *c.f. Coach, Inc. v. Becka*, No. 5:11-CV-371(MTT), 2012 U.S. Dist. LEXIS 157311, at *19–20 (M.D. Ga. Nov. 2, 2012) (noting as relevant to statutory damages award that the defendant "was operating out of a single small retail location[] and . . . did not sell or advertise the counterfeit items on the Internet").

In light of the foregoing, the Court will reduce Plaintiff's requested statutory damages from $50,000 per mark to $25,000 per mark, for a total of $75,000 in statutory damages. This amount per counterfeited mark is still well within the range that other courts "considering near-identical factual circumstances of glassware producers . . . have . . . awarded." *G.S. Holistic, LLC v. RHA Corp.*, No. 2:2022cv07898, ECF No. 35 at 7 (C.D. Cal. July 28, 2023) ("[C]ourts considering near-identical factual circumstances . . . have generally awarded between $10,000 and $25,000, with a high end of

$50,000.") (reducing statutory damages award from $50,000 requested per counterfeited mark to $20,000 per counterfeited mark) (collecting cases).

The cases to which Plaintiff cites in support of its assertion that "[s]ome courts in this Circuit have awarded enormous amounts for statutory damages in counterfeiting cases," ECF No. 9 at 14–15, are clearly distinguishable from the instant case, and Plaintiff does not attempt to analogize their factual circumstances to those now before the Court. For example, Plaintiff points to the $750,000 statutory damages award per infringing mark in *Deckers Outdoor Corporation v. Doe*, but that case involved a higher value trademark that had been acquiring goodwill for several decades, not just a couple of years. No. 11 C 10, 2011 U.S. Dist. LEXIS 119448, at *7 (N.D. Ill. Oct. 14, 2011).[6]

On balance, the Court concludes that a statutory damage award of $25,000 per mark (for a total of $75,000) is appropriate in this case.

### 3.2.2 Injunctive Relief

The Lanham Act authorizes injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark violations. 15 U.S.C. § 1116(a).

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

---

[6]Plaintiff also notes that "a court in this circuit . . . recently awarded statutory damages in the amount of $150,000 in a Stündenglass case." ECF No. 10 at 15 (citing *GS Holistic, LLC v. Abood Enter. et al.*, No. 1:22-cv-06161, ECF No. 26 (N.D. Ill. Oct. 6, 2023)). But again, Plaintiff does not actually argue that the factual circumstances there are analogous, and in any event, the court in that case does not appear to have performed a complete damages analysis, stating only that "[t]he amount sought by the Plaintiff is $150,000.00 and is not excessive." *Abood Enter. et al.*, No. 1:22-cv-06161, ECF No. 26 at 1.

> damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing *Weinberer v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982) and *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "[B]ecause of the difficulty in quantifying damage to the reputation or goodwill of a mark holder, courts presume irreparable harm and the inadequacy of legal remedies in Lanham Act cases." *H-D U.S.A.*, 311 F. Supp. 3d at 1050 (citing *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) and *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997)).

This leaves the Court to consider only the third and fourth elements, both of which are also met. If Defendants' counterfeiting continues, Plaintiff will continue to lose profits to which it is entitled, and Plaintiff's goodwill may be negatively impacted by Defendants' passing off as genuine allegedly inferior counterfeits. And "[w]hile a permanent injunction may harm [Defendants'] profits if [they are] forced to discontinue" offering for sale counterfeit Stündenglass products, Defendants "never had a legal right to profit from such counterfeiting" in the first place. *3D Designers Inspirations*, 70 F. Supp. 3d at 950. There is also no reason to believe that the public interest would be disserved by imposition of a permanent injunction in this case. To the contrary, "[t]he Seventh Circuit . . . has found that the public interest is served by an injunction enjoining the use of infringing trademarks because 'enforcement of the trademark laws prevents consumer confusion.'" *NCAA v. Kizzang LLC*, 304 F. Supp. 3d 800, 812 (S.D. Ind. 2018) (quoting *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th

Cir. 2000) and citing *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n.8 (7th Cir. 1988) and *Am. Auto. Assoc., Inc. v. Waler*, No. 1:16-cv-2890-WTL-MPB, 2017 WL 6387315, at *6 (S.D. Ind. 2017))). The Court will accordingly grant Plaintiff the permanent injunction it requests, which will be issued separately and entered contemporaneously with this Order.

### 4. CONCLUSION

In light of the foregoing, the Court will grant Plaintiff's motion for default judgment, ECF No. 9, and will award statutory damages to Plaintiff in the amount of $25,000 per mark, for a total of $75,000, plus Plaintiff's costs in the amount of in the amount of $931.59. The Court will also enter a permanent injunction against Defendants' infringing activity discussed herein by separate order entered contemporaneously with this Order.

Accordingly,

**IT IS ORDERED** that Plaintiff GS Holistic, LLC's motion for default judgment, ECF No. 9, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that judgment be entered in favor of Plaintiff GS Holistic, LLC and against Defendants Cigarworld Inc. d/b/a Milwaukee Vapor East and Chirag A. Patel jointly and severally in the amount of $75,931.59 ($75,000 in statutory damages and $931.59 in costs);

**IT IS FURTHER ORDERED** that Defendants Cigarworld Inc. d/b/a Milwaukee Vapor East and Chirag A. Patel shall, at their own cost, deliver to Plaintiff GS Holistic, LLC for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Marks;

**IT IS FURTHER ORDERED** that Plaintiff GS Holistic, LLC is entitled to permanent injunctive relief on the terms set forth in this Order, and which will be entered by separate order; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED.**

The Clerk of Court is directed to enter default judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of November, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge